KING et al. v. MORRIS.  (No. 872—4621.)

Commission of Appeals of Texas, Section A.
Oct. 12, 1927.

1. Descent and distribution ⬅89—Decedent's justiciable rights, based on overpayment of notes, passed to widow and daughter, so they could sue thereon.

Where there was a question whether the deceased husband and father had made overpayments on notes to payee thereof, such justiciable right passed to the widow and daughter, so as to enable them to bring action thereon to recover excess payments.

2. Witnesses ⬅150(3)—Testimony of payee of notes as to conversation with deceased maker relative to transaction held inadmissible in action by heirs to recover usurious payments (Rev. St. 1925, art. 3716).

Where a decedent's widow and daughter brought their action to recover from the payee the amount of usurious payments made by the deceased husband and father on such notes as his heirs, held, that the payee's testimony relative to the details of the transaction between him and the decedent in respect to the notes and interest payment thereon was inadmissible, by virtue of Rev. St. 1925, art. 3716.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Mrs. E. A. King and others against R. A. Morris. Judgment for defendant was affirmed by the Court of Civil Appeals (283 S. W. 575), and plaintiffs bring error. Reversed and remanded.

M. M. Smith and Everett Bryson, both of Pittsburg, for plaintiffs in error.

J. D. Bass, of Pittsburg, for defendant in error.

---

NICKELS, J. December 23, 1920, E. A. King executed three notes in favor of R. A. Morris. In form, one of them was for the principal sum of $2,200, with interest from maturity at 10 per centum per annum and with the maturity date of December 23, 1921, and the second was for the principal sum of $2,400, with like interest from maturity and with due date of December 23, 1922. The third, according to its printed and written recitals, was for the principal sum of $26, due December 23, 1923, with like interest from maturity. The third note had the figures "$2,600" in the upper left-hand corner. Each of the papers, in the lower left-hand corner and below the signature and with the caption "Credits," bears this notation, "10—23—21 int. 10 Mo. $166.66," and others showing that "interest" was then calculated upon a principal of $2,000.

Mr. King died in September, 1922. Mrs. E. A. King and Mrs. Richardson, plaintiffs in error, are his widow and daughter. Mrs. King, as "survivor of the community and as heir at law," and Mrs. Richardson, as "heir at law" and joined pro forma by her husband, brought suit against R. A. Morris, alleging their "sole" heirship, and charging: (a) That "shortly after the death" of Mr. King "defendant claimed to have three promissory notes payable to him and signed by the said E. A. King," of date December 23, 1920, due, respectively, one, two, and three years from that date for principal sums, respectively, of $2,200, $2,400, and $2,600, with 10 per centum per annum interest from maturities, and "demanded payment from these plaintiffs" according to those tenors; in response, and on September 10, September 25, and October 20, 1923, respectively, they paid $2,376.10 (on the first note), $2,384.44 (on the second note) and $2,380 (on the third note), those sums being the amounts claimed by defendant to be due; (b) the third note was not "for the sum of $2,600 as alleged by the defendant, but was only for the sum of $26," and the payment was made without opportunity of inspecting the note and without knowledge of its correct amount and solely because of confidence in defendant and reliance upon false and fraudulent representations of himself and agent touching the amount; (c) the credit entry (above described) was made by defendant without the knowledge or consent of Mr. King, but, on the contrary, Morris took surreptitiously and used $500 of Mr. King's money, then on deposit with him, and thus "applied said sum on said notes" by crediting each with $166.66 in the guise of interest payments, although no interest was then due. Conclusions drawn in the pleading are that plaintiffs thus overpaid and were fraudulently caused to overpay and that usury inhered in the transactions.

Mr. Morris, in pleading, did not tender the general issue, but especially denied existence of fraud and averred: (a) Execution of the three notes; (b) that Mr. King, October 23, 1921, "proposed to defendant that, if he would extend the time of payment of said note No. 1 for one year," he would then "pay up the interest on all of the three notes * * * amounting to $500," and the proposition was accepted, the payment of $500 "as interest to be credited" was made a credit of $166.66 as interest was made, on each note, and this "left even $2,000 balance on each of said notes, bearing interest at 10 per cent. per annum from that date;" (c) the final payments as alleged by plaintiffs were made, and these represented the "amounts then due," including "interest at 10 per cent. per annum from October 23, 1921"; (d) $2,600 "in figures" "states the correct sum for which" the third note was mutually intended "to be executed"—the original loan represented by the note being $2,000 and $600 being added by way of interest—and there was a mutual mistake of the parties to the extent that the language of the note had a different purport; (e) there was no usury practiced and plaintiffs are not entitled to "recover back any such sums as prayed for."

A special issue was submitted to the jury, inquiring whether "note No. 3" was "intended by the parties thereto to be a note for $26" or one "for $2,600." The jury found the intent of the parties to have been a note for $2,600. Judgment against the plaintiffs followed and on their appeal it was affirmed. 283 S. W. 575.

Against objection that the testimony is inhibited by the terms of article 3716, R. S. 1925 (article 3690, R. S. 1911), Mr. Morris was allowed to detail the transactions between him and Mr. King in respect to the notes and the interest payment of October 21, 1921. This testimony was material and constitutes the main, if not the whole, support of the verdict and of whatever additional findings by the judge were made or are presumable.

[1] The three notes, read together and independent of extrinsic matters, make up some evidence that (a) Nos. 1 and 2 each had for a true principal the sum of $2,000; (b) No. 3 had for a true principal the sum of $26, for that is the unambiguous statement of its writing as contrasted with its figures (subpar. 1, § 17, Negotiable Instruments Law; art. 5932, R. S. 1925); (c) an aggregate payment of $500 was made in relation to the debt by Mr. King and accepted by Mr. Morris October 23, 1921; (d) $166.66 of that amount was credited on each note, and this imports an agreement or direction to that effect; (e) if, as the language of the credit indicates, the payment was for interest at 10 per centum for 10 months' use or detention of principal, then $500 as interest was

paid for that use or detention of $4,026, and this greatly exceeded the maximum of non-usurious interest; (f) or, if a mistake was made in crediting the payments of $166.66 on each note as interest instead of principal, as might be inferred, since interest was not due, then Mr. King overpaid note No. 1. What is the true construction of the papers with their notations need not be determined, for manifestly, in any view of them by themselves, Mr. King had some justiciable rights based in usury or in overpayment. And whatever those rights were they came in part to the widow in virtue of community survivorship and in part by descent and in another part they descended to the daughter.

[2] Those rights, and the transactions out of which they grew, are inseparably related to and intermingled with the transactions which happened after Mr. King's death and sequent causes of action. The aggregated sum of rights and transactions is pleaded and upon it prayers for specific as well as for general relief are made by the widow and daughter as "heirs." Judgment in the suit must decree, one way or the other, the effect of the transactions between Mr. Morris and Mr. King, in so far as they relate to the payment on October 23, 1921, and to the true principal of the third note, and thus must affect the plaintiffs in the capacity of heirs. It is impossible, we believe, to accord the testimony competency in view of what is said in Spencer v. Schell, 107 Tex. 44, 173 S. W. 867.

Accordingly, we recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that the cause be remanded.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.